## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------X
                                                    :    11 Civ. 6189 (DLC)
FEDERAL HOUSING FINANCE AGENCY,                     :
                                                    :
                      Plaintiff,                    :
                                                    :
          -v-                                       :
                                                    :
HSBC NORTH AMERICA HOLDINGS INC., ET. AL.           ;
                                                    :
                      Defendants;                   :
                                                    :
                                                    :
                                                    :
------------------------------------------------------------------X
ROGER MAUERMANN, On behalf of himself and all       :
others: similarly situated,                         :
                                                    :
Plaintiff-Intervenors,                              :
                                                    :
          -v-                                       :
                                                    :
HSBC NORTH AMERICA HOLDINGS INC., ET. AL.           ;
                                                    :
                      Co-Defendants;                :
                                                    :
                                                    :
                                                    :
------------------------------------------------------------------X
```

---

### PLAINTIFF-INTERVENOR'S COMPLAINT

Plaintiff-Intervenors submit this Complaint against Defendants in the above-styled

action.

### (A)  <u>NATURE OF COMPLAINT</u>

The Complaint is based on the following premises;

1.      This action arises out of Defendants' role in connection with the creation and sale of residential mortgage-backed securities ("RMBS"). RMBS were pools of mortgages deposited into trusts ("RMBS Trusts").

2.      Plaintiff-Intervenors are individuals whose mortgages and notes were used to create the trusts in question, and due to the fraudulent and predatory tactics facilitated by the Defendants, have been in, or are currently undergoing, foreclosure proceedings. The trusts would not have existed but for the Plaintiff-Intervenors promises to pay through their promissory notes.

3.      The statute of limitations for the cause of actions brought forth by the Intervenors did not lapse because the Intervenors were not aware of Defendants' fraudulent actions until the Federal Housing Finance Agency (FHFA) uncovered such actions.

Alternatively, even if the statute of limitations did lapse, in this instance, the doctrine of equitable tolling, allows the Intervenors to initiate their actions.

4.      Without Intervention, Intervenors will be extremely prejudiced because they do not have the capabilities or resources of the current Plaintiff, FHFA, to conduct the required extensive discovery that is already ongoing. Although FHFA has obtained significant settlements in related matters, Intervenors interests are not adequately protected by the current Plaintiff, FHFA.

### (B) <u>PRELIMINARY STATEMENT</u>

5.      In the pending lawsuit, FHFA has thoroughly articulated its position.  Essentially, FHFA alleges that the Defendants developed a profitable scheme to push certain mortgages on an unsuspecting public, arranging for everything from over inflated appraisals to

insufficient underwriting requirements; and that the Defendants' primary focus was to package the mortgages as quickly as possible and sell them to the government or other investors before they defaulted.  This scheme to lend, package and sell, without proper regard for its impact on the government, or on the public, damaged FHFA and the proposed Intervenors.

6.      The same "push" to securitize large volumes of mortgage loans about which Plaintiff FHFA consistently complains in all of the cases, directly impacted the type of mortgages that were being "pushed" on Intervenors. In fact, before the banks sold the Plaintiffs the over stated, over-inflated, and doomed-to-fail mortgages, the loans were pushed on the Intervenors. Proposed Intervenors were victims of precisely the same predatory schemes and fraudulent acts which Plaintiff FHFA consistently raises throughout the cases.   If sophisticated investors and experienced government entities were defrauded, then it holds true that the less sophisticated Intervenors, whose mortgages and notes were packaged, were clearly defrauded.

7.      The proposed Intervenors are in the same, if not stronger position, than the current Plaintiffs to assert its claims in relation to the tortious conduct of the Defendants. The proposed Intervenors are the most aggrieved parties in this action.

8.      Proposed Intervenors are those individuals whose mortgages and notes were used to create the trusts in question, and who have been foreclosed on or are in foreclosure proceedings.   Intervenors are the most vulnerable victims of the fraudulent scheme, and it is virtually impossible for them to litigate independently against the Defendants, without the help of government resources.

9.      Similarly, in all of the lawsuits, FHFA indicates how during the period the loans were originated, mortgage loan originators throughout the industry pressured appraisers to issue inflated appraisals that met or exceeded the amount needed for the subject loans to be approved, regardless of the accuracy of such appraisals, and especially when the originators aimed at placing the mortgages into a package that would be sold for securitization.  Once again, one of the direct victims of such predatory and high- pressure tactics was the class of the proposed Intervenors, whose mortgages were placed in the trusts.  As such, they should be allowed to join in this action.

10.     This Complaint with the accompanied Motion to Intervene and Memorandum of Law is timely since the case against Defendants is currently in discovery and the causes of action brought by the Movants contain the same factual allegations as the original complaint. Therefore, there is no prejudice to the existing parties. Moreover, granting intervention will not lead to significant additional work for the current Plaintiff's attorneys. Intervenors will be involved with discovery, motions, any other pre-trial preparation, and the trial itself. If allowed to intervene, we will be able to utilize the appraisals, expert reports, accountings, etc. that the government has already requested, and will request in preparation for trial.

11.     This is expert and voluminous evidence that individual borrowers would never be able to procure because of, among other things, the astronomical cost of obtaining such expert evidence.  Conversely, without intervention (where the great majority of the work can be done by FHFA counsel), undersigned counsel's ability to pursue our clients' claims will be impaired, impeded and practically non-existent.  Furthermore, as the Memorandum of Law also shows, there are common issues of fact that warrant

intervention. Intervenors' main concerns involve vastly important public policy issues. The policy issues specifically involve the public trust.  Over the course of the last 50 years, few issues have caused such lack of faith in financial institutions and the federal government, as the recent housing bubble and resultant financial markets collapse from 2007-2010.

12.     The case at bar is, by most reasonable estimates, considered one of the premier mortgage-backed securities (MBS) cases in the country.  Quite frankly, the Intervenors rights have not been asserted by the federal government, nor are they contemplated to be asserted.  The federal government, through the Federal Home Loan Mortgage Corporation (Freddie Mac) and Federal National Mortgage Association (Fannie Mae), was previously responsible for ensuring liquidity and stability in the US housing market. More to the point, the case, as it presently stands, does not seek any relief for the borrowers. However, if intervention is allowed, the borrowers will have the appropriate forum and vehicle to pursue their remedies.

13.     In essence, Defendants through fraud, misrepresentation, and false statements of material facts, took advantage of people who believed in the American dream.  In fact, FHFA claims that Defendants were the primary motivators of America's largest homeowner crisis in the nation's history. The banks packaged precarious mortgages as if they were valuable paper, to be sold for the financial institutions' benefit without regard for the impact the predatory lending would have on Intervenors.

14.     All of the factual allegations in the causes of action raised by FHFA, vis-à-vis the borrowers, had a direct negative affect and clearly injured proposed Intervenors. Although the fraud committed on the borrowers (predatory lending practices) and Fannie and Freddie (misrepresentation as to the value of the mortgages, the performance or non- performance of the mortgages) are different, they are really just different stages of an overall plan of

deception perpetrated by the banks. They are different, but related, fraudulent acts, committed by the same Defendants at different points along the timeline. Nonetheless, the fraud perpetrated on the government entities could not have been perpetrated without the fraudulent practices visited upon the proposed Intervenors.

15.     This court, in an order of November 5th, 2012, denying multiple Defendants' Motion to Dismiss, made mention of one of the appraiser's description of Washington Mutual's (WAMU's) origination practices. "It was the Wild West… If you were alive, they would give you a loan. Actually, I think if you were dead, they would still give you a loan." (FHFA v. J.P. Morgan, et. al., 11 Civ. 6188; ECF No. 200 at 18-19). Furthermore, FHFA complains that after a forensic review of loan files, it found that certain related Defendants purposefully manipulated borrowers' credit profiles, and the court found that this strengthened the inference of a "link between generalized originator misconduct and the downgrade of the GSE Certification." (Order, infra at p. 25-26). Defendants' purposeful manipulation of borrowers' credit profiles and generalized originator misconduct all point to intentional misrepresentation and fraud. The direct victims of such misrepresentation and fraud were the Intervenors.

16.     A number of related cases, as well as the case at bar, are currently in the discovery stage of litigation. As such, Defendants will not be prejudiced if intervention is granted. Although a number of the cases have already settled, there are still a number of remaining cases which are scheduled to go to trial as early as June, 2014.

## (C) PARTIES

Proposed Intervenors

17.     Proposed Intervenors, Roger Mauermann and Debbie Mauermann, are borrowers whose mortgage was placed in a trust where HSBC is the trustee. The trust is known as HSBC Bank USA, National Association, As Trustee, in Trust for the Registered Holders of Ace Securities Corp., Home Equity Loan Trust, Series 2006-FM2 ("Series 2006- FM2") and is a subject of this litigation. As a result of the Defendants' unscrupulous and fraudulent practices, Intervenors' home was placed in foreclosure and is scheduled for trial on June 18, 2014. Enclosed as Exhibit "A" is the order setting residential foreclosure non-jury trial for June 18, 2014.

Defendants

18.     HSBC is a bank doing business throughout the United States. Their main U.S. office is located at 1800 Tysons Blvd, Mc Lean, Virginia 22102.

## (D) CLASS CERTIFICATION ALLEGATIONS

19.     Plaintiff seeks certification of a class and one subclass under both Fed. R. Civ. P. 23(b)(2) and Rule 23(b)(3).

20.     Definition of the Class: Pursuant to Fed. R. Civ. P. 23:

The Plaintiffs bring this Complaint against Defendants on behalf of the "Class," consisting of:

All present and past Intervenors whose mortgages and notes were assigned to the Trusts that are the subject, or have been the subject of the pending litigation known as FHFA v. HSBC; if the homeowners were foreclosed on, or foreclosure actions have been filed against them. Excluded from the Class are: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parent

companies, successors, predecessors, and any entity in which Defendants or their parent companies have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons. Plaintiff anticipates that amending the Class definitions may become necessary following discovery.

21.     Numerosity: The exact number of the members of the Class is unknown and is not available to the Plaintiffs, but it is clear that individual joinder is impracticable. Class members can be easily identified through Defendants' records and public records.

22.     Commonality: Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members. These common questions include:

a.  FHFA accuses HSBC of strict liability for making false and materially misleading statements. Did such actions, predicated on strict liability, also contribute to Plaintiff and class members' foreclosure? (Pls.' Compl. ECF No. 1 at ¶¶ 133-146).

b.  Whether HSBC's negligence contributed to Plaintiff and class members' foreclosure.

c.  FHFA accuses HSBC of culpably participating in violations of Section 11 and 12(a)(2) of Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o ("Section 15"). (Pls.' Compl. ECF No. 1 at ¶¶ 164-178). In doing so, FHFA claims that HSBC misrepresented the mortgage loan characteristics in the

Registration Statements. Were Plaintiff and/or class members mortgage loan documents used to perpetuate such misrepresentation?

d. FHFA accuses HSBC of common law negligence and failure to exercise sufficient due diligence to ensure that the Registration did not contain an untrue statement of a material fact. (Pls.' Compl. ECF No. 1 at ¶¶ 241-256). According to FHFA, HSBC had unique, exclusive, and special knowledge about the underlying mortgage loans in securitization. Was Plaintiff and/or class members' mortgage loan documents used in furtherance of such negligent activities? Were Plaintiff or class members preyed upon by HSBC in order to further HSBC's negligent scheme?

23.     Typicality: The Plaintiffs' claims are typical of the claims of other members of the Class as the Plaintiffs and other members' sustained damages arise out of the wrongful conduct of Defendants, based upon the same transactions which were made uniformly to the Plaintiffs and the public. The federal and state laws under which the Plaintiffs' claims arise do not conflict with the laws of any other state in any material way.

24.     Adequate Representation: Plaintiff will fairly and adequately represent and protect the interests of the members of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class and Defendants have no defenses unique to Plaintiff.

25.     Predominance and Superiority: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. It

would be virtually impossible for the individual members of the Class to obtain effective relief from the misconduct of Defendants. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

26.     Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendants has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The policies of Defendants challenged herein apply and affect members of both the Class uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

## (E) JURISDICTION

27.     Jurisdiction of this Court is founded upon 28 U.S.C. § 1332(a)(1), which gives federal courts original jurisdiction over claims brought by the Plaintiffs since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Jurisdiction of this Court is also founded upon 28 U.S.C. § 1331 because the claims asserted herein arise under 18 U.S.C § 1341 and 18 U.S.C. § 1343.

28.     Furthermore, this Court has jurisdiction over the common law, federal law, and New York statutes, pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) since the issues are so related to the original action that they "form a part of the case or controversy."

## COUNT I - FRAUD IN THE INDUCEMENT

29.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 28 above, as though fully set forth herein.

30.     This is an action for damages against Defendants for Fraud in the Inducement.

31.     On or about the closing date of the subject transaction, and in order to intentionally induce the Intervenors to enter into the transaction, Defendants, by and through its authorized representatives at the closing, sometimes known as the originator, provided the Intervenors with false information regarding the finance charges and interest rate that Intervenors would be required to pay under the mortgage and mortgage note.

32.     These representations were false, and Defendants and their representatives should have known they were false when they were made.

33.     Defendants knew these representations were material to the Intervenors in making a determination whether or not to sign the mortgage in question. Indeed, proper disclosure of finance charges and applicable interest rates are federally mandated under the Truth in Lending Act ("TILA").

34.     The Intervenors justifiably relied on the foregoing misrepresentations by, inter alia, (1) entering into the subject mortgage, (2) paying significant closing costs and other expenses at the closing on this transaction, (3) faithfully paying their interest and principal on the mortgage in question for several years, and (4) foregoing other means of financing their primary residence.

35.     As a direct and proximate result of the foregoing misrepresentations of material fact, the Intervenors have been damaged.

WHEREFORE, the Intervenors demand a judgment against Defendants, for damages, interest, attorneys' fees, costs, and such other relief as may deemed appropriate by this Court.

## COUNT II - BREACH OF CONTRACT

36.     Intervenors re-allege and incorporate by reference the allegations of paragraphs 1 through 35 above, as though fully set forth herein.

37.     The Intervenors and Defendants through Defendants' representatives entered into a mortgage contract, a copy of which is attached hereto and incorporated herein by reference.

38.     The Intervenors have complied with all of the terms of the agreement, or are otherwise excused from compliance due to Defendants' prior breach of the agreement.

39.      Defendants have breached the mortgage contract between the parties by, *inter alia:*

(a) Failing to properly and timely demand payments from the Intervenors prior to collecting the amounts allegedly owed;

(b) Improperly collecting, paying and allocating fees and advances received from the Intervenors under the mortgage and note; and/or in the alternative,

(c) Force placing hazard, wind, fire and/or flood insurance upon the Intervenors and requiring that Intervenors pay the premium for said insurance.

40.     As a direct and proximate cause of the aforementioned breaches of the mortgage contract, the Intervenors suffered damages, were no longer able to make the payments under the mortgage contract, and the Intervenors credit rating to be significantly damaged.

WHEREFORE, The Intervenors pray that this Honorable Court take jurisdiction of this case; order an accounting under the mortgage and note of all money collected and paid out by Defendants and its assignors, restore and/or return any and all overpayments made by the Intervenors and/or improperly paid out by Defendants and/or Mortgage Electronic Registration System ("MERS") and their assignors, and award costs and reasonable attorney fees, and such other relief as this Court deems just and proper.

**COUNT III - UNJUST ENRICHMENT**

41.     Intervenors re-allege and incorporate by reference the allegations of paragraphs 1 through 44 above, as though fully set forth herein.

42.     Defendants had an implied obligation and an implied contract with the Intervenors to ensure that they understood all fees which would be paid to the Defendants in order for the Intervenors to obtain credit and to not charge any fees which were unrelated to the settlement of the loan and without full disclosure to the Intervenors.

43.     Defendants had full knowledge that an adjustable rate predatory mortgage with an increase in the interest rate due to the Yield Spread Premium ("YSP") was NOT in the Intervenors best interests.

44.     Defendants cannot in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits and gains and YSP fee unrelated to the settlement services provided at closing.

45.     Defendants have been unjustly enriched at the expense of the Intervenors, and maintenance of said unjust enrichment would be contrary to the rules and principles of equity.

WHEREFORE, The Intervenors pray that this Honorable Court take jurisdiction of this case; order an accounting under the mortgage and note of all money collected and paid out by Defendants and/or MERS and its assignors, restore and/or return any and all overpayments made by The Intervenors and/or improperly paid out by Defendants and/or MERS and their assignors, and award costs and reasonable attorney fees.

## COUNT IV - BREACH OF FIDUCIARY DUTY

46.     Intervenors re-allege and incorporate by reference the allegations of paragraphs 1 through 45 above, as though fully set forth herein.

47.     Defendants and their assignors, by their actions in contracting to provide mortgage loan services and a loan program to the Intervenors, which was not only to be best suited to the Intervenors given their income and expenses, but by which Intervenors would also be able to satisfy their obligations without risk of losing their home, were "fiduciaries" in which Intervenors reposed trust and confidence. This is especially true given that Intervenors were not and are not investment bankers, securities dealers, mortgage lenders, mortgage brokers, or mortgage lenders.

48.     Defendants, either directly or through its assignors, breached its fiduciary duties to the Intervenors by fraudulently inducing the Intervenors to enter into a mortgage transaction which was contrary to the Intervenors' stated intentions; contrary to the Intervenors' interests; and contrary to the Intervenors' preservation of their home.

49.     As a direct and proximate result of the Defendants' breach of its fiduciary duties,

the Intervenors have suffered damages.

50.     Under the totality of the circumstances, the Defendants' actions, either directly or through its assignors, were willful, wanton, intentional, and with a callous and reckless disregard for the rights of the Intervenors justifying an award of not only actual compensatory but also exemplary punitive damages to serve as a deterrent not only as to future conduct of the named counter-Defendants herein, but also to other persons or entities with similar inclinations.


WHEREFORE, the Intervenors, demand a judgment against Defendants, for damages, interest, attorneys' fees, costs, and such other relief as may deemed appropriate by this Court.

## COUNT V

## Violation of 18 U.S.C. § 1962(c): RICO

51.     Intervenors re-allege the allegations set forth in Paragraphs 1 and 50 as though fully set forth below.

52.      Defendants violated 18 U.S.C. §§ 1962(c) by conducting, or participating directly or indirectly in the conduct of the affairs of the originator through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§1341 and 1343.

53.     As a direct and proximate result, Intervenors have been injured in their business or property by the predicate acts that make up Defendants' pattern of racketeering activity through the originator.


## COUNT VI

**Violation of 18 U.S.C. § 1962(d): RICO -- The Financial Fraud**

54.     Plaintiffs re-allege the allegations set forth in Paragraphs 1-53 as though fully set forth below.

55.     In violation of 18 U.S.C. § 1962(d) Defendants have, as set forth above, conspired to violate 18 U.S.C. § 1962(c). The conspiracy commenced at least as early as 2006 and continues. The object of the conspiracy was to sell and finance mortgages at unjustified and inflated prices resulting in increased profits for Defendants.

56.     As set forth above, each Defendants knowingly, willfully and unlawfully agreed and combined to conduct or participate in, directly or indirectly, the conduct of the affairs and activities of the originator through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§1341 and 1343, in violation of 18 U.S.C. § 1962(c).

57.     Defendants committed numerous overt acts of racketeering activity or other wrongful activity in furtherance of said conspiracy.

58.     The purpose of the acts that caused injury to Intervenors was to advance the overall objective of the conspiracy, and the harm to Intervenors was a reasonably foreseeable consequence of Defendants' Appraisal **Fraud** Scheme.

59.     As a direct and proximate result, Plaintiffs have been injured in their business or property by Defendants' conspiracy and by the predicate acts that make up Defendants' pattern of racketeering activity through the originators and mortgage brokers.

**PRAYER FOR RELIEF**

**Plaintiffs hereby pray for the following relief:**

A.      A determination that Defendants have violated 18 U.S.C. §§ 1962(c) and (d);

B.      An injunction prohibiting Defendants from further violations of 18 U.S.C. §§ 1962(c) and (d);

C.      As to all Counts, an order that Defendants pay damages in an amount to be determined at trial;

D.      As to all Counts, an order that Defendants pay treble the amount of damages suffered by Intervenors and Proposed Class Members;

E.      An order of restitution of all payments and charges that Defendants improperly collected from Intervenors and Proposed Class Members;

F.      A determination that Defendants are jointly and severally liable as to all Counts herein;

G.      An award to Intervenors and Proposed Class Members of the costs and disbursements incurred in connection will this action, including reasonable attorneys' fees and the reimbursement of expenses in amounts to be determined by the Court;

H.      An award to Intervenors and Proposed Class Members of prejudgment interest;

I.      Trial by Jury of all issues triable as of right by a jury; and

J.      Such other and, further relief as the Court may deem just and proper.


Dated this 18th day of August,
2014

                                                        /s/ William J. Sanchez
                                                        William Sanchez
                                                        William J. Sanchez P.A.
                                                        12600 SW 120th Street
                                                        Suite 102
                                                        Miami, FL 33186
                                                        (305) 232-8889

william@wsanchezlaw.com

John de Leon
Chavez and DeLeon P.A.
1399 SW 1st Ave.
Suite 202
Miami, FL 33130