```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
 FEDERAL HOUSING FINANCE AGENCY,        :
                                        :     11cv6189 (DLC)
               Plaintiff,               :     11cv6201 (DLC)
                                        :
      -v-                               :     OPINION & ORDER
                                        :
                                        :
 HSBC NORTH AMERICA HOLDINGS INC., et   :
 al.,                                   :
                                        :
               Defendants.              :
                                        :
 And other FHFA cases.                  :
----------------------------------------X
```

APPEARANCES:

For plaintiff Federal Housing Finance Agency:

Philippe Z. Selendy
Kathleen M. Sullivan
Adam M. Abensohn
David B. Schwartz
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Fl.
New York, NY 10010

Marc E. Kasowitz
Christopher P. Johnson
Michael A. Hanin
Kanchana Wangkeo Leung
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, NY 10019

For defendants HSBC North America Holdings Inc., HSBC USA Inc., HSBC Markets (USA) Inc., HSBC Bank USA, N.A., HIS Asset Securitization Corp., HSBC Securities (USA) Inc., Neal Leonard, Gerard Mattia, Todd White, and Jon Voigtman:

Michael O. Ware
Jennifer M. Rosa
Charles S. Korschun
MAYER BROWN LLP
1675 Broadway

```
```
New York, NY 10019

David Boies
Damien J. Marshall
Andrew Z. Michaelson
BOIES SCHILLER & FLEXNER LLP
575 Lexington Ave.
New York, NY 10022

For defendants Nomura Holding America Inc., Nomura Asset Aceptance Corp., Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., Nomura Securities International, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca:

Amanda F. Davidoff
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Ave., NW, Ste. 700
Washington, DC 20006

Bruce E. Clark
Katherine J. Stoller
SULLIVAN & CROMWELL LLP
125 Broad St.
New York, NY 10004

For defendant RBS Securities Inc.:

Thomas C. Rice
David J. Woll
Andrew T. Frankel
Alan Turner
SIMPSON THACHER & BARTLETT LLP
425 Lexington Ave.
New York, NY 10017

DENISE COTE, District Judge:

Plaintiff Federal Housing Finance Agency ("FHFA"), as conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (together, the Government-Sponsored Enterprises

or "GSEs"), brought these actions against financial institutions involved in the packaging, marketing, and sale of residential mortgage-backed securities ("RMBS") purchased by the GSEs between 2005 and 2007.  FHFA has pled claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"), as well as the District of Columbia and Virginia Blue Sky laws (together, the "Blue Sky Laws").  FHFA alleges, among other things, that defendants[1] made materially false statements in offering documents for the RMBS.  Defendants now move for summary judgment on the ground that FHFA's securities claims are time-barred by the applicable statutes of repose.

## BACKGROUND

The GSEs purchased the RMBS at issue in these actions between November 30, 2005 and July 3, 2007.  More than three years later, FHFA brought the above-captioned actions.  FHFA filed both of these actions on September 2, 2011, within three years of FHFA's appointment as conservator of Fannie Mae and Freddie Mac on September 6, 2008.

---

[1] The remaining defendants are HSBC North America Holdings Inc. and related entities ("HSBC"), Nomura Holding America Inc. and related entities ("Nomura"), and RBS Securities Inc. ("RBS"). The GSEs purchased the securities at issue between the following dates: with respect to HSBC, from December 20, 2005 to July 3, 2007; with respect to Nomura, from November 30, 2005 to April 30, 2007; and with respect to RBS, from August 31, 2006 to January 31, 2007.

Section 13 of the Securities Act contains a three-year statute of repose that governs claims brought under Sections 11 and 12.  15 U.S.C. § 77m.  The Blue Sky Laws contain two- and three-year statutes of repose.  D.C. Code § 31-5606.05(f)(1) (three years); Va. Code Ann. § 13.1-522(D) (two years).

In 2008, in the aftermath of the financial crisis, Congress created the FHFA, authorized it to act as conservator for the GSEs, and passed a statute extending FHFA's time to bring any action on their behalf.  The Housing and Economic Recovery Act of 2008 ("HERA") creates a new "statute of limitations with regard to any action brought by the [FHFA] as conservator or receiver."  12 U.S.C. § 4617(b)(12)(A).  In the case of any "tort claim," "the applicable statute of limitations" is the longer of (1) the three-year period beginning on the date FHFA is appointed as conservator or receiver; (2) the three-year period beginning on the date on which the cause of action accrues; and (3) the period applicable under state law.  Id. at § 4617(b)(12).  In addition, HERA provides for the revival of tort claims "for which the statute of limitations applicable under State law . . . has expired not more than 5 years before the appointment of the [FHFA]."  Id. at § 4617(b)(13)(A).  HERA defines "tort claim" to mean "a claim arising from fraud, intentional misconduct resulting in unjust enrichment, or

4

intentional misconduct resulting in substantial loss to the regulated entity." Id. at § 4617(b)(13)(B).[2]

Defendants argue that HERA applies to statutes of limitations to the exclusion of statutes of repose and thus that Section 13's and the Blue Sky Laws' two- and three-year statutes of repose bar these actions. Former defendant UBS Americas, Inc. and its affiliates ("UBS"), which later settled the related action brought by FHFA against them, made the same argument to this Court in a motion to dismiss. On June 19, 2012, the Court denied that motion in relevant part, holding that HERA extended statutes of repose as well as statutes of limitations, but certified the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). FHFA v. UBS Americas, Inc., 858 F. Supp. 2d 306 (S.D.N.Y. 2012) ("UBS I"). The June 19 decision was affirmed by the Second Circuit on April 5, 2013. FHFA v. UBS Americas Inc., 712 F.3d 136 (2d Cir. 2013) ("UBS II"). Defendants here raised the same argument in their own motions to dismiss, which were denied in relevant part on November 27, 2012 (Nomura and RBS) and November 28, 2012 (HSBC).

---

[2] This provision, subparagraph (13)(B), contains a typographical error, as it refers to "[a] tort claim referred to under clause (i)." The words "tort claim" appear in clause (ii), not clause (i). Immediately preceding subparagraph (13)(B) is subparagraph (13)(A), which refers to "any tort claim described under clause (ii)." Accordingly, it is clear that (13)(B) defines "tort claim" as used in clause (12)(A)(ii).

On June 9, 2014, the Supreme Court issued an opinion in CTS Corp. v. Waldburger, 134 S. Ct. 2175 (2014), holding that a provision in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") extended certain statutes of limitations but not statutes of repose.  Before CTS was decided, the Tenth Circuit held that an extender provision governing actions brought by the National Credit Union Administration ("NCUA") -- a part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") -- that is nearly identical to the HERA extender provision applied to statutes of repose.[3]  NCUA v. Nomura Home Equity Loan, Inc., 727 F.3d 1246 (10th Cir. 2013).  The Supreme Court vacated and remanded that decision for reconsideration in light of CTS. Nomura Home Equity Loan, Inc. v. NCUA, 134 S. Ct. 2818 (June 16, 2014).  On August 19, 2014, the Tenth Circuit reinstated its decision, holding that CTS did not alter its analysis.  NCUA v. Nomura Home Equity Loan, Inc., --- F.3d ---, 2014 WL 4069137 (10th Cir. Aug. 19, 2014) ("NCUA").

Defendants brought these motions on June 20, 2014.  They were fully submitted on July 18.  Defendants contend that CTS so

---

[3] HERA's subsection (b)(12) is identical to FIRREA's subsection (b)(14) -- after changing "Board" to "Agency" and "liquidating agent" to "receiver" -- with one trivial exception: the NCUA statute refers to "the date the claim accrues" where HERA refers to "the date on which the claim accrues."  See 12 U.S.C. § 1787(b)(14); 12 U.S.C. § 4617(b)(12).

6

changes the applicable analysis that this Court is no longer bound by the Second Circuit's opinion.  Defendants request summary judgment on this basis and, in the alternative, ask that this Court certify this issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  For the reasons that follow, defendants' motions and their requests for certification are denied.

## DISCUSSION

The Second Circuit has already decided this question, and the subsequent decision in CTS does not undermine the Second Circuit's ruling for many of the reasons set out in the Tenth Circuit's August 21 Opinion in NCUA, which is incorporated by reference, as well as certain additional reasons given below.

**I.  Legal Standard**

"In construing a statute, we begin with the plain language, giving all undefined terms their ordinary meaning."  UBS II, 712 F.3d at 141.  Courts are "not to construe each phrase literally or in isolation," but rather to "attempt to ascertain how a reasonable reader would understand the statutory text, considered as a whole."  Id. (citation omitted).  When statutory text is ambiguous, courts turn to other methods of statutory interpretation, including legislative history.  Id.

## II. <u>CTS</u> Did Not Disturb the Second Circuit's Holding.

The Second Circuit squarely held that, "[i]n view of the text of the statute and its legislative history . . . it is clear that Congress intended one statute of limitations -- § 4617(b)(12) of HERA -- to apply to <u>all</u> claims brought by FHFA as conservator" and to "supplant[] any other time limitations that otherwise might have applied." <u>UBS II</u>, 712 F.3d at 143-44. For each of the reasons set out in the Tenth Circuit's finely written opinion, <u>CTS</u> does not disturb this holding. As the text of FIRREA is identical, in all material respects, to that of HERA, the Tenth Circuit's textual analyses apply directly.

Among those holdings which this Court adopts, the following are of particular note:

> The text and structure of [HERA's] Extender Statute are fundamentally different from [CERCLA's]. . . . [B]y establishing all-purpose time limits for any actions [FHFA] may wish to pursue, the Extender Statute displaces <u>all</u> preexisting limits on the time to bring suit, whatever they are called. . . . CERCLA has a completely different structure. Rather than setting its own time limit to bring a [claim], [CERCLA] recognizes that the time limits in state statutes apply.

<u>NCUA</u>, 2014 WL 4069137, at *5 (citation omitted).

> [U]nlike [CERCLA], which employs the term "applicable limitations period" to identify the state law time frames modified by the federal commencement date (that is, the specific object of federal preemption), [HERA's] Extender Statute uses "period applicable under State law" to help construct a new exclusive time framework for [FHFA] actions that replaces all pre-existing time limits (including repose periods). Whether the state period used to

8

> construct this framework is one of limitations or repose has no bearing on whether the new Extender Statute framework itself displaces statutes of repose.

Id. at *9.

> In sum, [HERA]'s Extender Statute's surrounding language differs considerably from [CERCLA]'s in that it features the concept of repose, uses the word "period" differently, and lacks a tolling provision. The [Supreme] Court's analysis of the terms "period" and "civil action," as well as the tolling provision in [CERCLA], cannot be extended to [HERA's] Extender Statute because its text and structure are fundamentally different from [CERCLA's].

Id. at *10. The Tenth Circuit's other analyses apply as well for the reasons below.

### A. Legislative History and Purpose

The Tenth Circuit emphasized that FIRREA's legislative history and purpose strongly support the court's holding, and contrast sharply with CERCLA's. NCUA, 2014 WL 4069137, at *11-13. The same is true for HERA.

In CTS, the Supreme Court relied, in part, on a report commissioned by Congress that recommended changes to state tort law including the discovery rule enacted in CERCLA's extender provision. This report "acknowledged that statutes of repose were not equivalent to statutes of limitations and that a recommendation to pre-empt the latter did not necessarily include the former." CTS, 134 S. Ct. at 2186. By contrast, the legislative history of HERA strongly confirms that its

limitations provision displaces all previously applicable timeliness provisions.

The Second Circuit explained that

> Congress enacted HERA and created FHFA in response to the housing and economic crisis, precisely because it wanted to address the dire financial condition of Fannie Mae and Freddie Mac. As HERA makes clear, Congress intended FHFA to take action to "collect all obligations and money due" to the GSEs, to restore them to a "sound and solvent condition."

UBS II, 712 F.3d at 142 (quoting 12 U.S.C. § 4617(b)(2)(B)(ii), (D)). With HERA, Congress created the FHFA and vested it with investigatory powers, like the subpoena power, to enable it to suss out the GSEs' claims. HERA was designed "to give FHFA the time to investigate and develop potential claims on behalf of the GSEs." Id. As the Second Circuit noted, "Congress obviously realized that it would take time for this new agency to mobilize and consider whether it wished to bring any claims and, if so, where and how to do so." Id. Accordingly, HERA created a new statute of limitations running, at the earliest, from the appointment of FHFA as conservator, that "supplants any other time limitations that otherwise might have applied" to FHFA's claims. Id. at 143-44.

**B.   Statutory Context**

The Tenth Circuit considered the use of the phrase "statute of limitations" or "statute of limitation" elsewhere in FIRREA. The court noted that the phrase is used in provisions setting

10

deadlines for appealing NCUA's denial of a claim that do not allow for accrual or tolling, which is indicative of a broad use of the phrase "statute of limitations" encompassing statutes of repose. NCUA, 2014 WL 4069137 at *10.

HERA's Section 4617 includes two similar provisions setting deadlines for appeal of FHFA's denial of certain claims. See 12 U.S.C. § 4617(a)(6)(B), (8)(D). Both provisions are styled "[s]tatute of limitations," despite the fact that they do not allow for accrual or tolling. Id. "[I]t is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." Taniguchi v. Kan Pac. Saipan, Ltd., 132 S. Ct. 1997, 2004-05 (2012) (citation omitted). Accordingly, these provisions further support a broad construction of "statute of limitations" to encompass statutes of repose.

### III. Additional Arguments

Defendants raise several additional arguments not treated in the Tenth Circuit's Opinion. They are addressed in turn.

#### A. HERA's Revival Provision Refers to a Singular Period.

Defendants argue that the phrase "statute of limitations" must be read narrowly in the HERA provision reviving expired tort claims, subparagraph (13)(A), and that this narrow reading should therefore apply throughout the statute. Defendants misconstrue this provision. It reads:

11

> In the case of any tort claim described [above] for which the statute of limitations applicable under State law with respect to such claim has expired not more than 5 years before the appointment of the [FHFA] as conservator or receiver, the [FHFA] may bring an action as conservator or receiver on such claim without regard to the expiration of the statute of limitations applicable under State law.

12 U.S.C. § 4617(b)(13)(A).

Defendants contend that reading "statute of limitations" broadly here to encompass statutes of repose "would not make sense where the five-year rule dictated a different result for the statute of limitations and the statute of repose." Yet this provision measures five years from the date the limitations period "expired" -- i.e., when the claim became untimely -- which is a single date, whether or not repose periods are included.

Consider, for example, the Securities Act, the model for many states' Blue Sky laws. Section 13 of the Securities Act bars any action brought more than (a) one year after discovery of the untrue statement or omission or (b) three years after the offering or sale of the relevant security. 15 U.S.C. § 77m. Section 13's limitations period "expires" when either the one-year period or the three-year period runs, whichever runs first. It would be odd, indeed, to contend that this period had not "expired" more than three years after the offering or sale, simply because the one-year period had not yet run. It is

12

defendants' interpretation of the revival provision that is unreasonable, as defendants would have HERA resuscitate claims five years after the discovery-based period had run, but leave untouched claims barred by a two- or three-year repose period. That result would be wholly out of keeping with HERA's structure and purpose.

### B. Date of Passage

Defendants next argue that "the distinction between statutes of limitations and repose was clear by the time of HERA's passage." The Supreme Court did note in CTS that the "more precise" usage of "statute of limitations," in distinction to a statute of repose, is "now predominant." CTS, 134 S. Ct. at 2186. But, in the immediately preceding paragraph, the Court "acknowledged that the term 'statute of limitations' is sometimes used in a less formal way" to "refer to any provision restricting the time in which a plaintiff must bring suit." Id. at 2185. In particular, the Court recognized that "Congress has used the term 'statute of limitations' when enacting statutes of repose," and cited in support a provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 -- which was passed two years after HERA. Id. (citing 15 U.S.C. § 78u-6(h)(1)(B)(iii)(I)(aa)). As in CTS, the fact that HERA employs the term "statute of limitations" is "instructive, but it is not dispositive." Id.

13

**C.   Securities Claim Is Not a "Tort Claim."**

Defendants next contend that HERA applies only to state contract and tort claims, not to statutory claims or federal claims. As an initial matter, the Second Circuit squarely rejected this argument in UBS. "Giving the words of § 4617(b)(12) their plain meaning, and considering the provision as a whole, [the Second Circuit] conclude[d] that a reasonable reader could only understand it to apply to both the federal and state claims in this case." UBS II, 712 F.3d at 142. CTS did not address this issue, and defendants have offered no reason to believe the law in this circuit has changed subsequently.

Indeed, defendants' argument is rebutted by HERA's plain language, as HERA defines "tort claim" to mean "a claim arising from fraud, intentional misconduct resulting in unjust enrichment, or intentional misconduct resulting in substantial loss to the regulated entity." 12 U.S.C. § 4617(b)(13)(B). FHFA's securities fraud claims here are alleged to "aris[e] from fraud . . . or intentional misconduct resulting in substantial loss" to the GSEs, and thus are easily encompassed by this definition. Even if this definition did not apply,[4] HERA states expressly that it is creating "the applicable statute of

---

[4] As noted above, due to a typographical error in the statute, HERA defines "tort claim" as used in "clause (i)" rather than "clause (ii)," despite the fact that "tort claim" only appears in clause (ii).

14

limitations with regard to any action brought by the Agency as conservator or receiver." Id. at § 4617(b)(12)(A) (emphasis added).

And defendants are wrong to contend that the reference to otherwise applicable state law periods somehow removes federal claims from HERA's scope. The fact that the limitations period created for FHFA's "tort claims" is "the period applicable under State law" in certain circumstances -- where that period extends beyond three years after accrual or appointment of FHFA as conservator -- does not indicate that the only claims covered are state law claims. Where there is no "period applicable under State law" for a "tort claim," the limitations period is simply three years from accrual or appointment. Again, HERA expressly applies to "any action" brought by FHFA as conservator. Id. at § 4617(b)(12)(A) (emphasis added).

**D.   Repeal by Implication**

Defendants further argue that HERA should not be read to "impliedly repeal" Section 13's statute of repose, citing cases that predate the Second Circuit's considered opinion in UBS II holding that HERA "supplants any other time limitations that otherwise might have applied," including Section 13's. UBS II, 712 F.3d at 143-44. This Court expressly rejected defendants' argument in UBS I, 858 F. Supp. 2d at 317 n.8. Defendants offer

15

no reason why the Court should revisit that decision or second-guess that of the Second Circuit.  As explained in UBS I:

> Section 13 continues to apply with full force to the vast majority of litigants; HERA creates an exception for a single, privileged plaintiff -- FHFA.  Moreover, because, as explained above, HERA's reference to the "statute of limitations" encompasses not only the narrower use of the term advocated by defendants but also what defendants refer to as "statutes of repose," HERA no more impliedly repealed the latter than it did the former.  And even defendants agree that, to the extent it applies to federal claims, HERA constitutes a valid extension of Section 13's one-year limitation period.

Id.

### E.   Presumption Against Pre-emption of State Law

Defendants also argue that a presumption against the pre-emption of state law should apply, citing to a part of Justice Kennedy's opinion in CTS joined by two other Justices.  Yet, this presumption is only effective "when the text of a pre-emption clause is susceptible of more than one plausible reading."  CTS, 134 S. Ct. at 2188 (citation omitted).  For the reasons stated above, that is not the case here.

Moreover, HERA is quite different from CERCLA in this respect.  Courts are to "assume[] that the historic police powers of the States [a]re not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. (citation omitted).  The presumption against pre-emption is strongest "when Congress legislates in an area traditionally

16

governed by the States' police powers." Id.  In CTS, there was "no question that States possess the traditional authority to provide tort remedies to their citizens as they see fit." Id. (citation omitted).  Here, by contrast, "[p]olicing fraud against federal agencies is hardly a field which the States have traditionally occupied." Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 347 (2001) (citation omitted).  Thus, any such presumption applied here would be weak.

**IV. Certification for Interlocutory Appeal**

The standard for certification is well established. Section 1292(b) provides, in relevant part, that

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.

28 U.S.C. § 1292(b); see Casey v. Long Island R.R. Co., 406 F.3d 142, 146 (2d Cir. 2005) (noting that Section 1292(b) "imposes both procedural and substantive requirements on a would-be appellant").

The Second Circuit has emphasized that Section 1292(b) certification should be "strictly limited because only

17

exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Flor v. BOT Fin. Corp., 79 F.3d 281, 284 (2d Cir. 1996) (per curiam) (citation omitted). Certification is thus appropriate only in the narrow class of cases in which "an intermediate appeal may avoid protracted litigation." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 866 (2d Cir. 1996).

Certification is inappropriate here. At the earliest stages of this massive litigation, this Court certified this very question to the Second Circuit, which issued an opinion that squarely addressed it. For the reasons stated by the Tenth Circuit in NCUA and those given above, it is clear that CTS does not disturb that decision. Accordingly, there is no "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Review of the decisions issued recently in the Western District of Texas does not alter that judgment. See FDIC v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 2014 WL 4161561 (W.D. Tex. Aug. 18, 2014); FDIC v. Goldman, Sachs & Co., 2014 WL 4161567 (W.D. Tex. Aug. 18, 2014).

Nor would interlocutory appeal "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Trial in the HSBC action begins on September 29; trial in Nomura is scheduled to begin in several months. The parties will soon

18

be able to appeal this issue, together with all other issues, following a final judgment. The most efficient way to reach the ultimate termination of this litigation is to try these cases.

**CONCLUSION**

Defendants' June 20, 2014 motions for summary judgment concerning the applicable statutes of repose and requests for Section 1292(b) certification on this issue are denied.

SO ORDERED:

Dated:   New York, New York
         August 28, 2014

```
                              _____
                                     DENISE COTE
                              United States District Judge
```